**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

March 27, 2015


Usable Life Insurance Company                    Certified Mail
2908 Poston Avenue, % Corp. Svc. Co.             Return Receipt Requested
Nashville, TN 37203                              7012 3460 0002 8948 3504
NAIC # 94358                                     Cashier # 19341

Re:    Bentina Duck  V.  Usable Life Insurance Company

       Docket # 24258

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served March 27, 2015, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.


Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Jefferson County
    P O Box 671
    Dandridge, Tn 37725

**EXHIBIT**
**A**

| STATE OF TENNESSEE | COURT *(Must be completed)*<br>Circuit | COUNTY*(Must be*<br>*completed)* Jefferson |
|---|---|---|
| | **SUMMONS** | file no. 34358<br>*(Must be completed)*<br><br>division I<br>*(Large counties only)* |
| **Plaintiff** *(Name: First, Middle, Last)*<br><br>BENTINA DUCK | | **Defendant** *(Name: First, Middle, Last)*<br><br>USABLE LIFE |

**TO:** **The Defendant Named Above**

□ *[Alternative 1: residence address]*

_____

□*[Alternative 2: employer's name and address]*

_____

☒*[Alternative 3: other suitable address]*
USABLE LIFE by and through Commissioner of
Tennessee Department of Commerce and Insurance
500 James Robertson Parkway, Suite 660,
Nashville, TN 37243-1121

You are hereby commanded to answer and make defense to a Complaint which has
been filed in this case. Your defense to this Complaint must be filed in the office of the
clerk of this court on or before 30 days after service of this Summons upon you. If you
fail to do so, judgment by default will be taken against you for the relief demanded in the
Complaint.

WITNESSED and issued this ___13___ day of ___March___
20_15_

_____
Name and Title of Clerk

By_____

_____
Deputy Clerk

Received this _____ day
of_____, 20_____

/s/

_____
Deputy Sheriff

**STATE OF TENNESSEE**
**COUNTY OF** _____

I certify that the foregoing is a true and correct copy of the original Summons issued in this case.

_____
Name and Title of Clerk

By _____
Deputy Clerk

## OFFICER'S RETURN

I certify that I have served this Summons together with the Complaint as follows:

On _____, 20 ____, I delivered a copy of the Summons and Complaint to the Defendant.

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, TENNESSEE
## AT DANDRIDGE

BENTINA DUCK, )
)
    **Plaintiff,** )    **JURY DEMAND**
)
**v.** )    NO.: 24258
)
USABLE LIFE, )
)
    **Defendant.** )

## COMPLAINT

**COMES** the Plaintiff, Bentina Duck, (hereinafter "Plaintiff"), by and through the undersigned counsel of record, and hereby brings the following Complaint against Defendant USAble Life, stating as follows:

### PARTIES

1. At all relevant times Plaintiff was and is an adult resident of the State of Tennessee.

2. Plaintiff alleges upon information and belief that Defendant USAble Life is an insurance company authorized to transact the business of insurance in this state.

3. Plaintiff alleges upon information and belief that Defendant USAble Life was the underwriter for Policy Number 6003-DI1/2 (hereinafter "Policy"), which was originally issued to Plaintiff in the State of Tennessee, and which is administered by Defendant USAble Life.

4. Plaintiff alleges upon information and belief that Defendant USAble Life may be served with process by serving the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1121.

FILED 3/13 20 15
AT 12:45 O'CLOCK P.M
PENNY O. MURPHY, CLERK

1

## JURISDICTION AND VENUE

5. This is an action for damages for failure to pay benefits under an insurance policy and other related claims over which this Court has jurisdiction.

6. Venue is proper in Jefferson County, Tennessee.

## FACTS

7. At all relevant times Plaintiff was a teacher for Jefferson County School System.

8. While Plaintiff was employed by Jefferson County School System, said entity purchased a disability insurance Policy from Defendant USAble Life.

9. Plaintiff applied for coverage, was accepted, and was thereafter covered under said Policy with a coverage effective date of July 1, 1999.

10. Plaintiff's employment at the time the Policy was issued and at the time she became disabled was as a teacher as she was hired by Jefferson County School System on a full-time basis on October 31, 1994.

11. All premiums have been paid and Plaintiff has satisfied all the requirements for coverage under the above Policy, which is a contract for insurance.

12. Plaintiff, while covered under the Policy, suffered from and/or developed, *inter alia*, fibromyalgia and interstitial cystitis on or about August 1, 2013, or thereafter, which caused then and/or subsequently, *inter alia*, pain, fatigue, physical restrictions and/or limitations, and problems with concentration or memory, all of which interfered with her ability to work, and ultimately caused her to become disabled.

13. On or about August 1, 2013, Plaintiff's medical condition caused her to have a complete inability to perform either the material and substantial duties of her

2

occupation on a full-time basis or to perform with reasonable continuity all of the material and substantial duties of any other occupation for which she is fitted by training, education, experience, age and physical and mental capacity, at which time she suffered a significant loss of earnings, and subsequently for which she has been unable to earn any income.

14. On or about August 1, 2013, Plaintiff applied for benefits under the Policy by submitting an insured's statement and, thereafter, by submitting, *inter alia*, the following: medical records covering the period from March 1, 2008, through October 7, 2014, as well as a September 23, 2013, attending physician's statement by Emmett S. Manley, M.D. (Board Certified in Family Practice Medicine), and a September 5, 2014, opinion letter from William M. Bell, III, M.D. (Board Certified in Rheumatology), which demonstrate the Plaintiff's impairments and disability.

15. Defendant USAble Life initially denied long-term disability benefits on December 6, 2013, Plaintiff timely appealed, and on September 30, 2014, USAble Life again denied benefits, and Plaintiff timely appealed.

16. On December 16, 2014, Defendant USAble Life sent Plaintiff a letter indicating that it had again denied coverage for long-term disability benefits.

17. Plaintiff has not received any benefits due under the Policy, including back benefits from August 4, 2013, through the present, as well as future benefits until her 65th birthday on October 17, 2037, while Plaintiff remains disabled under the terms of the Policy.

18. It is the undersigned's current understanding that, if disabled pursuant to the terms of the policy, Plaintiff, who has a birthdate of October 17, 1972, a disability onset date on or about August 1, 2013, whose long term disability benefits became payable on August 4, 2013, is entitled to a $2,000.00 per month gross long term disability benefit, offset by her monthly Social Security disability family maximum benefit of $1,720.00 until May 9, 2020, when her youngest child reaches the age of 18, then offset by her monthly Social Security disability primary insurance amount of $1,147.00, for a net long term disability monthly benefit of $280.00 to May 9, 2020, and then for a net long term disability monthly benefit of $853.00 to age 65 or October 17, 2037, such that she is entitled to $5,527.43 in back benefits, $125,037.06 in future benefits (using 3.65 % to discount to net present value), for a total long term disability benefit of $130,564.49.

19. As Plaintiff's Social Security disability claim is still pending, the value of the contractual benefits without the other income offset in the policy is $364,642.20.

## COUNT I

## BREACH OF CONTRACT

Plaintiff incorporates the allegations contained in paragraphs 1 through 19 as if fully stated herein and further states that:

20. Under the laws of the State of Tennessee, Plaintiff was covered under the Policy and said Policy constitutes a contract for insurance coverage.

21. Under the laws of the State of Tennessee, Plaintiff made a valid and timely claim for benefits under terms of the Policy and Defendant has refused to pay.

22. Under the laws of the State of Tennessee, all premiums have been paid and Plaintiff has met all other conditions precedent to have a valid contract for insurance coverage and has satisfied the terms of the contract entitling her to benefits under the contract.

23. Under the laws of the State of Tennessee, Defendant has breached, and continue to breach, their contractual duties under the insurance Policy by failing and refusing to pay the full benefits owed the Plaintiff and by failing to perform their duties as set out in the contract.

24. Under the laws of the State of Tennessee, as a direct and proximate result of Defendant's breach, Plaintiff has suffered, and continues to suffer, substantial damages as previously set forth above.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests that this Court grant her the following relief in this case:

That the Court enter judgment in favor of Plaintiff and against Defendant and that the Court order Defendant to perform its obligations under the contract for insurance and to pay past due benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

That the Court order Defendant to pay Plaintiff prejudgment interest in all benefits that have accrued prior to the date of judgment;

That the Court order Defendant to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

That the Court order Defendant to continue paying benefits to Plaintiff until such

time as she no longer qualifies for continuation of benefits.

That the Court order Defendant to pay Plaintiff's attorneys' fees and costs under applicable law, and,

That Plaintiff recover any and all other relief to which she may be entitled. Plaintiff further demands a jury to hear her case.

Dated this _10th_ day of March, 2015.

Respectfully submitted,

BY: _D. Seth Holliday_

D. Seth Holliday (TN Atty. Reg. No. 23136)
McMahan Law Firm, LLC
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
1-800-317-7723 (toll free)
1-706-217-6118 (office)
1-706-217-6880 (facsimile)
sholliday@mcmahanfirm.com



P.O. Box 1650 • Little Rock, AR 72203-1650

# AMENDMENT NO. 1

This amendment forms a part of group policy No.: **6003-DI1/2**

Issued to the Policyholder: **JEFFERSON COUNTY SCHOOLS**

The Group Insurance Application and the Policy are hereby amended as follows:

## VOLUNTARY GROUP LONG TERM DISABILITY

**AMOUNT OF INSURANCE:**
The employee's amount of insurance, which is subject to our approval, is shown in the schedule below next to the Plan he selected. At time of claim, this amount may be reduced by other income benefits received as shown on page 14. The employee is eligible for any Plan up to, but not exceeding, the Plan shown for his monthly salary range at time of application.

| Plan | Monthly Salary* | | Monthly Benefit | Plan | Monthly Salary* | | Monthly Benefit |
|------|------|------|------|------|------|------|------|
| 200 | $301 | – $450 | $200 | 3100 | $4,651 | – $4,800 | $3,100 |
| 300 | $451 | – $600 | $300 | 3200 | $4,801 | – $4,950 | $3,200 |
| 400 | $601 | – $750 | $400 | 3300 | $4,951 | – $5,100 | $3,300 |
| 500 | $751 | – $900 | $500 | 3400 | $5,101 | – $5,250 | $3,400 |
| 600 | $901 | – $1,050 | $600 | 3500 | $5,251 | – $5,400 | $3,500 |
| 700 | $1,051 | – $1,200 | $700 | 3600 | $5,401 | – $5,550 | $3,600 |
| 800 | $1,201 | – $1,350 | $800 | 3700 | $5,551 | – $5,700 | $3,700 |
| 900 | $1,351 | – $1,500 | $900 | 3800 | $5,701 | – $5,850 | $3,800 |
| 1000 | $1,501 | – $1,650 | $1,000 | 3900 | $5,851 | – $6,000 | $3,900 |
| 1100 | $1,651 | – $1,800 | $1,100 | 4000 | $6,001 | – $6,150 | $4,000 |
| 1200 | $1,801 | – $1,950 | $1,200 | 4100 | $6,151 | – $6,300 | $4,100 |
| 1300 | $1,951 | – $2,100 | $1,300 | 4200 | $6,301 | – $6,450 | $4,200 |
| 1400 | $2,101 | – $2,250 | $1,400 | 4300 | $6,451 | – $6,600 | $4,300 |
| 1500 | $2,251 | – $2,400 | $1,500 | 4400 | $6,601 | – $6,750 | $4,400 |
| 1600 | $2,401 | – $2,550 | $1,600 | 4500 | $6,751 | – $6,900 | $4,500 |
| 1700 | $2,551 | – $2,700 | $1,700 | 4600 | $6,901 | – $7,050 | $4,600 |
| 1800 | $2,701 | – $2,850 | $1,800 | 4700 | $7,051 | – $7,200 | $4,700 |
| 1900 | $2,851 | – $3,000 | $1,900 | 4800 | $7,201 | – $7,350 | $4,800 |
| 2000 | $3,001 | – $3,150 | $2,000 | 4900 | $7,351 | – $7,500 | $4,900 |
| 2100 | $3,151 | – $3,300 | $2,100 | 5000 | $7,501 | – $7,650 | $5,000 |
| 2200 | $3,301 | – $3,450 | $2,200 | 5100 | $7,651 | – $7,800 | $5,100 |
| 2300 | $3,451 | – $3,600 | $2,300 | 5200 | $7,801 | – $7,950 | $5,200 |
| 2400 | $3,601 | – $3,750 | $2,400 | 5300 | $7,951 | – $8,100 | $5,300 |
| 2500 | $3,751 | – $3,900 | $2,500 | 5400 | $8,101 | – $8,250 | $5,400 |
| 2600 | $3,901 | – $4,050 | $2,600 | 5500 | $8,251 | – $8,400 | $5,500 |
| 2700 | $4,051 | – $4,200 | $2,700 | 5600 | $8,401 | – $8,550 | $5,600 |
| 2800 | $4,201 | – $4,350 | $2,800 | 5700 | $8,551 | – $8,700 | $5,700 |
| 2900 | $4,351 | – $4,500 | $2,900 | 5800 | $8,701 | – $8,850 | $5,800 |

Amendment to VLTD-P1.0 (5-95)

DI1/2

 **USAble Life**

P.O. Box 1650 • Little Rock, AR 72203-1650

| 3000 | $4,501 | – | $4,650 | $3,000 | 5900 | $8,851 | – | $9,000 | $5,900 |
|------|--------|---|--------|--------|------|--------|---|--------|--------|
|      |        |   |        |        | 6000 | $9,001 | & | over   | $6,000 |

*If there is a reduction or misstatement of salary that results in the employee being ineligible for the plan selected, the benefit will be reduced to the highest level the employee is eligible for. Any unearned premium will be refunded.

**ELIMINATION PERIOD:**  Plan I or Plan II as selected by the employee.

| **Plan I** | **Plan II** |
|------------|-------------|
| Accident - 0 days | Accident - 60 days |
| Sickness - 3 days | Sickness - 60 days |

**HUMAN ORGAN TRANSPLANT BENEFIT:**  $50,000

**PRE-EXISTING CONDITIONS EXCLUSIONS/LIMITATIONS:** 3/12

**This amendment changes your policy. The amendment is valid only if notice is given of the amendment and you accept it. Retention of the amendment and payment of the next premium due will constitute acceptance of the amendment by you.**

The effective date of this amendment is                     SEPTEMBER 1, 2010

The policy's terms and provisions will apply other than as stated in this amendment.

Dated at _____ this _____ day of _____ ,
                   (City, State)

_____
JEFFERSON COUNTY SCHOOLS
          (Policyholder)

_____
          (Signature)

**USAble Life**

*Jason Mann*

President

Amendment to VLTD-PI.0 (5-95)                                        DI1/2



**USAble Life**  320 W. Capitol • P.O. Box 1650 • Little Rock, AR 72203-1650
(501) 375-7200
1-800-648-0271

---

## GROUP LONG TERM DISABILITY POLICY

**POLICYHOLDER:**
Jefferson County School

**POLICY NUMBER:**
6003-DII/2

**EFFECTIVE DATE:**
July 1, 1999

**MONTHLY PREMIUM:**

**PREMIUM DUE DATE:**
First Day of Each Month

**RENEWAL DATE:**
July 1, 2000 and each
Succeeding July 1

**STATE OF DELIVERY:**
TENNESSEE

AGE RATED % of total covered payroll per month.

USAble Life (referred to as "we," "our," or "the Company") agrees to pay the benefits provided by this policy in accordance with its provisions.

The policy is issued in consideration of the application of the Policyholder, a copy of which is attached, and of the payment of premiums by the Policyholder.

The following pages including any riders, endorsements, or amendments are a part of this policy.

This policy is delivered in and governed by the laws of the governing jurisdiction and, to the extent applicable, by The Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

Signed for USAble Life at Little Rock, Arkansas, on the effective date.

*James B. House*
President

Nonparticipating
Renewable
GROUP LONG TERM DISABILITY POLICY

# POLICY INDEX

| | Page |
|---|---|
| Section I - Application | 3 |
| Section II - Definitions | 5 |
| Section III - Eligibility and Effective Dates | 10 |
| Section IV - Benefits | 11 |
| **Limitations and Exclusions:** | |
| Mental Illness Limitation | 17.4 |
| Human Organ Transplant Pre-existing Limitation | 17.17 |
| General Exclusions | 18 |
| Pre-existing Condition Limitation for Disability Income | 19 |
| Section V - Termination Provisions | 20 |
| Section VI - General Policy Provisions | 22 |
| Section VII - Premiums | 27 |

Addendum No. 001 to be ~ ched to and made part of the Group Insurance Application, VI-MAPP

Application By: Jefferson County School          Effective: July 1, 1999

### VOLUNTARY GROUP LONG TERM DISABILITY

**AMOUNT OF INSURANCE:**
The employee's amount of insurance, which is subject to our approval, is shown in the schedule below next to the Plan he selected. At time of claim, this amount may be reduced by other income benefits received as shown on page 14. The employee is eligible for any Plan up to, but not exceeding, the Plan shown for his monthly salary range at time of application.

| Plan | Monthly Salary* | Monthly Benefit | Plan | Monthly Salary* | Monthly Benefit |
|------|----------------|-----------------|------|----------------|-----------------|
| 200 | $301 – $450 | $200 | 1200 | $1,801 – $1,950 | $1,200 |
| 300 | $451 – $600 | $300 | 1300 | $1,951 – $2,100 | $1,300 |
| 400 | $601 – $750 | $400 | 1400 | $2,101 – $2,250 | $1,400 |
| 500 | $751 – $900 | $500 | 1500 | $2,251 – $2,400 | $1,500 |
| 600 | $901 – $1,050 | $600 | 1600 | $2,401 – $2,550 | $1,600 |
| 700 | $1,051 – $1,200 | $700 | 1700 | $2,551 – $2,700 | $1,700 |
| 800 | $1,201 – $1,350 | $800 | 1800 | $2,701 – $2,850 | $1,800 |
| 900 | $1,351 – $1,500 | $900 | 1900 | $2,851 – $3,000 | $1,900 |
| 1000 | $1,501 – $1,650 | $1,000 | 2000 | $3,001 & over | $2,000 |
| 1100 | $1,651 – $1,800 | $1,100 | | | |

*If there is a reduction or misstatement-of-salary that results in the employee being ineligible for the plan selected, the benefit will be reduced to the highest level the employee is eligible for. Any unearned premium will be refunded.

**ELIMINATION PERIOD:**    Plan I or Plan II as selected by the employee.

|  Plan I | Plan II |
|---------|---------|
| Accident - 0 days | Accident - 60 days |
| Sickness - 3 days | Sickness - 60 days |

**HUMAN ORGAN TRANSPLANT BENEFIT:** $50,000

**PRE-EXISTING CONDITIONS:**
If an insured employee becomes disabled due to a pre-existing condition during the first year after becoming covered and that disability exceeds the Elimination Period, we will pay the regular monthly benefit for a period not to exceed one month.

"Pre-existing Condition" means a diagnosed sickness or injury for which the insured received treatment within three (3) months prior to the insured's effective date. The term "pre-existing condition" will also include any condition which is related to any such injury or sickness.

"Treatment" means consultation, care, or services provided by a physician including diagnostic measures and taking prescribed drugs and medicines.

Signature

# SECTION II
# DEFINITIONS

For the purpose of this policy:

ACTIVE EMPLOYMENT means the employee must be working:

1. for the employer on a full-time active basis and paid regular earnings;

2. at least the minimum number of hours shown in the application;

3. at the employer's usual place of business; or

4. at a location to which the employer's business requires the employee to travel.

ACCIDENT means bodily injury caused by an accident occurring while this Policy is in force and is the direct cause, independent of disease or bodily infirmity, of the loss sustained by the Insured while his insurance coverage is in force.

ANNUAL SALARY means the insured's earnings in effect from the employer for the twelve month period immediately prior to the date total disability begins. Annual salary includes earnings from the insured's primary occupation, as specified in his application, before any reductions. It does not include bonuses, overtime pay, and extra compensation other than commissions. Commissions will be averaged over the 12 month period prior to the date total disability begins.

ANY OCCUPATION - See definition of Total Disability or Totally Disabled.

APPLICATION is the document showing the eligible classes, the amounts of insurance and other relevant information pertaining to the plan of insurance applied for by the policyholder. This document, designated Section I, is attached to and is part of this policy.

BASIC MONTHLY EARNINGS or PRE-DISABILITY EARNINGS means the insured's monthly rate of earnings from the employer in effect immediately prior to the date total disability begins. Basic monthly earnings include earnings from the insured's primary occupation, as specified in his application, before any reductions. It does not include bonuses, overtime pay and extra compensation other than commissions. Commissions will be averaged over the 12 month period prior to the date total disability begins.

CERTIFICATE means a written statement prepared by the Company including all amendments, riders and supplements, if any, setting forth a summary of:

1. the insurance benefits to which an employee is entitled;
2. to whom the benefits are payable; and
3. limitations or requirements that may apply.

COMPANY, WE, OUR, or US means USAble Life, Little Rock, Arkansas.

CONCURRENT DISABILITY means if total disability results from more than one cause at the same time, it will be considered the same disability, and the insured will be entitled to only one monthly disability benefit.

**DISABILITY BENEFIT,** when used with the term retirement plan, means money which:

1. is payable under a retirement plan due to disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as retirement benefits under the plan if the disability had not occurred. (If the payment does cause such a reduction, it will be deemed a retirement benefit as defined in this policy.)

**ELIGIBILITY DATE** means the date an employee becomes eligible for insurance under this policy. Classes are shown in the application. An employee is eligible to apply for coverage during the enrollment period specified by USAble Life.

**ELIMINATION PERIOD** means a period of consecutive days of total disability for which no benefit is payable. The elimination period is shown in the application and begins on the first day of total disability.

> If the insured returns to work for any 7 or less days during the elimination period and cannot continue, we will count only those days the insured is totally disabled to satisfy the elimination period.

**EMPLOYEE** means a person in full-time active employment with the employer.

**EMPLOYER** means the policyholder and includes any division, subsidiary or affiliated company named in the application.

**ENROLLMENT PERIOD** is a period of time specified by the Company.

**EVIDENCE OF INSURABILITY** means a statement or proof of an employee's medical history upon which acceptance for insurance will be determined by the Company.

**GRACE PERIOD** is the 31 days following a premium due date during which premium payment may be made. During the grace period the policy shall continue in force, unless the policyholder has given the insurer written notice of discontinuance of the policy.

**GROSS MONTHLY BENEFIT** means the insured employee's monthly benefit before any reduction for other income benefits and earnings.

SECTION II - DEFINITIONS (continued)

HOME OFFICE means the principal office of USAble Life in Little Rock, Arkansas.

SICKNESS means illness, disease, pregnancy or complications of pregnancy. The sickness must begin while the employee is insured under this policy.

INJURY means bodily injury resulting directly from an accident and independently of all other causes. The injury must occur and disability must begin while the employee is insured under this policy.

> Exception: Any disability which begins more than 60 days after an injury will be considered a sickness for the purpose of determining benefits under this policy.

INSURED means an employee insured under this policy.

MALE PRONOUN whenever used includes the female.

MONTHLY BENEFIT means the amount payable by the Company to the disabled insured.

OWN OCCUPATION - See definition of Total Disability or Totally Disabled.

PHYSICIAN means a person who:

1. is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
2. is legally qualified as a medical practitioner and required to be recognized under this policy for insurance purposes according to the insurance statutes/regulations of the governing jurisdiction; and
3. is not the insured or his spouse, daughter, son, father, mother, sister or brother.

PLAN means this group master policy and the certificates of insurance provided for your insured employees.

PRE-DISABILITY EARNINGS - See definition of Basic Monthly Earnings.

RETIREMENT BENEFIT, when used with the term retirement plan, means money which:

1. is payable under a retirement plan either in a lump sum or in the form of periodic payments;

2. does not represent contributions made by an employee (payments which represent employee contributions are deemed to be received over the employee's expected remaining life regardless of when such payments are actually received); and

3. is payable upon:

   a. early or normal retirement; or
   b. disability if the payment reduces the amount of money which would have been paid at the normal retirement age under the plan if the disability had not occurred. (If the payment does not cause such a reduction, it will be deemed a disability benefit as defined in this policy.)

**SECTION II – DEFINITIONS (continued)**

**RETIREMENT PLAN** means a plan which provides retirement benefits to employees and which is not funded wholly by employee contributions. The term shall not include: a 401(k), profit-sharing plan, thrift plan, informal salary continuation plan, individual retirement account (IRA), tax sheltered annuity (TSA), stock ownership plan, or a non-qualified plan of deferred compensation.

**EMPLOYER'S RETIREMENT PLAN** is deemed to include any retirement plan:

1. which is part of any federal, state, county, municipal or association retirement system; or

2. for which the employee is eligible as a result of employment with the employer or for which the employee is eligible from a union retirement plan.

**TIME EFFECTIVE** means an effective date will start at 12:01 a.m. A termination date will end at 12:00 midnight. Each of these times is Standard Time in the place where the policy is delivered. Insurance under the policy will start and end at these times.

**TOTAL COVERED PAYROLL** is the total amount of basic monthly earnings for which all employees are insured under this policy.

**SECTION II - DEFINITIONS (continued)**

All full-time active employees whose annual salary is $30,000 or more per year are eligible for a 60 Month Own Occupation Benefit. (See A below under Total Disability or Totally Disabled.)

All other full-time active employees are eligible for a 24 Month Own Occupation Benefit. (See B below under Total Disability or Totally Disabled.)

A.  **TOTAL DISABILITY or TOTALLY DISABLED** means during the elimination period and the next 60 consecutive months of disability the insured is:

1.  unable to perform all of the material and substantial duties of his occupation on a full-time basis because of a disability:

   a.  caused by injury or sickness;
   b.  that started while insured under this policy; and

2.  after 60 months of benefits have been paid, the insured is unable to perform with reasonable continuity all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

B.  **TOTAL DISABILITY or TOTALLY DISABLED** means during the elimination period and the next 24 consecutive months of disability the insured is:

1.  unable to perform all of the material and substantial duties of his occupation on a full-time basis because of a disability:

   a.  caused by injury or sickness;
   b.  that started while insured under this policy; and

2.  after 24 months of benefits have been paid, the insured is unable to perform with reasonable continuity all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

With respect to insureds employed as pilots, co-pilots and crew of aircraft:

"Total disability" or "totally disabled" means because of injury or sickness the insured cannot perform the material duties of any gainful occupation for which he is or becomes reasonably fitted by training, education or experience. The loss of a pilot's license for any reason does not, in itself, constitute total disability.

# Section III – Eligibility and Effective Dates

**A. ELIGIBLE CLASSES**

The classes eligible for insurance are shown in the application.

**B. ELIGIBILITY DATE**

An employee in an eligible class will qualify for insurance on the later of:

1. the policy effective date; or

2. during the enrollment period specified by USAble Life.

**C. EFFECTIVE DATES OF INSURANCE**

An employee's insurance will be effective at 12:01 a.m. on the first day of the policy month following the date the application is approved by us.

An employee must use forms provided by us when applying for insurance.

The Company may require evidence of insurability with respect to each employee.

Delayed Effective Date of Insurance - The effective date of any initial, increased or additional insurance will be delayed for an employee if he is not in active employment because of a disability. The initial, increased or additional insurance will start on the date that the employee returns to full-time active employment.

# SECTION IV
# BENEFITS

**PARTIAL DISABILITY or PARTIALLY DISABLED** means as a result of the sickness or injury which caused total disability, the insured is:

1. able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on a full-time or a part-time basis; or

2. able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis.

To qualify for a partial disability benefit the insured must be earning less than 80% of his pre-disability earnings at the time partial disability employment begins.

## PARTIAL DISABILITY

When proof is received that an insured is partially disabled from a sickness or injury following a period of total disability for which benefits were payable, the Company will pay a partial disability benefit if the insured:

1. is partially disabled within 31 days of the date his total disability benefits cease; and

2. gives to the Company upon request, and at the insured's expense, proof of continued;

    a. partial disability; and
    b. regular attendance of a physician.

## PARTIAL DISABILITY MONTHLY BENEFIT

To figure the amount of monthly benefit:

Take the lesser of:

    a. The monthly benefit selected by the employee as shown on his application; or
    b. 100% of the insured's pre-disability earnings less other income benefits shown on page 14.

The Partial Disability Benefit will never be less than the minimum monthly benefit shown in the application.

# SECTION IV
# BENEFITS

**PROOF OF DISABILITY**

When the Company receives proof that an insured is disabled under the terms and provisions of this policy due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:

1. disability; and
2. regular attendance of a physician.

The proof must be given upon request and at the insured's expense.

The monthly benefit will not:

1. exceed the insured's amount of insurance; or
2. be paid for longer than the maximum benefit period.

The amount of insurance and the maximum benefit period are shown in the application.

**SECTION IV - BENEFITS (continued)**

**MONTHLY BENEFIT**

The monthly benefit will be the amount of coverage selected by the employee as shown on his application less other income benefits shown on page 14. The monthly benefit for this policy will be paid on a prorata basis. The rate will be 1/30 per day for any period of disability that does not extend through a full month.

The monthly benefit will never be less than the minimum monthly benefit shown in the application.

SECTION IV – BENEFITS (continued)

OTHER INCOME BENEFITS

Other income benefits mean those benefits shown below:

1. The amount of temporary and/or permanent benefits/awards for which the insured is eligible under:
   a. Workers' or Workmen's Compensation Law;
   b. occupational disease law; or
   c. any other act or law of like intent.

2. The amount of any disability income benefits for which the insured is eligible to receive under any compulsory benefit act or law.

3. The amount of any disability income benefits for which the insured is eligible to receive under:
   a. any other group insurance plan of the employer; or
   b. any governmental retirement system as a result of his job with the employer.

4. The amount of benefits from the employer's retirement plan the insured:
   a. receives as disability benefits;
   b. voluntarily elects to receive as retirement benefits; and/or
   c. receives as retirement benefits when the insured reaches the greater of age 62 or normal retirement age, as defined in the retirement plan.

   As used here, "receives" does not include any amount rolled over or transferred to any eligible retirement plan as that term is defined in §402 of the Internal Revenue Code of 1986 and any future amendments to §402 which affect the definition of an eligible retirement plan.

5. The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, The Quebec Pension Plan, or any similar plan or act, as follows:
   a. disability or unreduced retirement benefits for which:
      i. the insured is eligible; and
      ii. his spouse, child or children are eligible because of his disability; or
      iii. his spouse, child or children are eligible because of his eligibility for unreduced retirement benefits; or
   b. reduced retirement benefits received by:
      i. the insured; and
      ii. his spouse, child or children because of his receipt of the reduced retirement benefits.

6. The amount of earnings the insured earns or receives from any form of employment.

These other income benefits, except retirement benefits, must be payable as a result of the same disability for which we pay a benefit.

## SECTION IV - BENEFITS (continued)

### COST OF LIVING FREEZE

After the first deduction for each of the other income benefits, the monthly benefit will not be further reduced due to any cost of living increases payable under these other income benefits. This provision does not apply to increases received from any form of employment.

### LUMP SUM PAYMENTS

Other income benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the expected lifetime of the insured. In each case, the amount to be prorated will be calculated by an actuary, based on a morbidity table, with interest, or a mortality table, with interest, depending on the source of the lump sum.

### TERMINATION OF DISABILITY BENEFITS

The monthly benefit will cease on the earliest of:

1. the date the insured is no longer disabled under the terms and provisions of this policy; or

2. the date the insured dies; or

3. the end of the maximum benefit period; or

4. the date the insured's current earnings exceed 85% of his pre-disability earnings.

NOTE:   Because the insured's current earnings may fluctuate, the Company may average earnings over three (3) consecutive months rather than immediately terminating his/her benefit once 85% of pre-disability earnings has been reached.

### BENEFIT PERIOD EXTENSION

The maximum benefit period is shown in the application. However, benefits will be extended beyond the end of the maximum benefit period if a disabled employee attains the age specified in the benefit duration and has not received twelve monthly benefit payments. In this event, the benefit period will be extended during the continuance of disability until twelve monthly payments have been paid.

## SECTION IV - BENEFITS (continued)

RECURRENT DISABILITY means a disability which is related or due to the same cause(s) as a prior disability for which a monthly benefit was payable.

A recurrent disability will be treated as part of the prior disability if, after receiving disability benefits under this policy, an insured:

1. returns to his regular occupation on a full-time basis for less than three months; and

2. performs all the material duties of his occupation.

To qualify for a recurrent disability benefit, the insured must experience more than a 20% loss of pre-disability earnings.

Benefit payments will be subject to the terms of this policy for the prior disability.

If an insured returns to his regular occupation on a full-time basis for three months or more, a recurrent disability will be treated as a new period of disability. The insured must complete another elimination period.

If an insured becomes eligible for coverage under any other group long term disability policy, this recurrent disability section will cease to apply to that insured.

**SECTION IV - BENEFITS (continued)**

**THREE MONTH SURVIVOR BENEFIT**

The Company will pay a lump sum benefit to the eligible survivor when proof is received that an insured died:

1. after disability had continued for 180 or more consecutive days; and

2. while receiving a monthly benefit.

The lump sum benefit will be an amount equal to three times the insured's last monthly benefit.

If payment becomes due to the insured's children, payment will be made to:

1. the children; or
2. a person named by the Company to receive payments on the children's behalf. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

**LAST MONTHLY BENEFIT** means the monthly benefit paid to the insured immediately prior to his death but not including any reduction for earnings received from employment.

## MENTAL ILLNESS LIMITATION

Benefits for disability due to mental illness will not exceed 24 months of monthly benefit payments unless the insured meets one of these situations:

1. The insured is in a hospital or institution at the end of the 24 month period. The monthly benefit will be paid during the confinement.

   If the insured is still disabled when he is discharged, the monthly benefit will be paid for a recovery period up to 90 days.

   If the insured becomes reconfined during the recovery period for at least 14 days in a row, benefits will be paid for the confinement and another recovery period up to 90 more days.

2. The insured continues to be disabled and becomes confined:

   a. after the 24 month period; and

   b. for at least 14 days in a row.

   The monthly benefit will be payable during the confinement.

The monthly benefit will not be payable beyond the maximum benefit period.

**HOSPITAL or INSTITUTION** means a facility licensed to provide care and treatment for the condition causing the insured's disability.

**MENTAL ILLNESS** means disability due to or resulting from psychiatric or psychological conditions, regardless of cause, such as:
1. schizophrenia;
2. depression;
3. manic depressive or bipolar illness;
4. anxiety;
5. personality disorders;
6. adjustment disorders;

or other conditions usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs or other similar modalities used in the treatment of the above conditions.

This limitation does not apply to dementia, if due to:
1. stroke;
2. trauma;
3. viral infection;
4. Alzheimer's disease;

or other such conditions not listed above which are not usually treated by a mental health provider using psychotherapy, psychotropic drugs or other similar modalities.

## SECTION IV - BENEFITS (continued)

### HUMAN ORGAN TRANSPLANT BENEFIT

#### BENEFIT AMOUNT

The benefit is shown in Addendum No. 1. It is payable in a lump sum only.

#### TRANSPLANT PROCEDURES

The following transplant procedures are covered subject to any exclusions, terms, or limitations listed below:

> Human Organ Transplants:  Heart, Lung (single/double), Heart/Lung, Liver, Pancreas, and Pancreas/Kidney organ transplant procedures. An organ transplant is completely performed if the insured employee receives the human donor organ. Transplants of the Kidney(s) only are not covered. Multiple organ transplant procedures are not covered except for those specified above.

#### INDEMNITY BENEFIT

An insured employee shall be paid the Benefit Amount if a covered Transplant Procedure is completely performed on the insured employee while his coverage under the policy is in force.

#### EXTENDED BENEFIT

An additional benefit, equal to the Benefit Amount, shall be paid to the insured's beneficiary if the insured employee dies after 30 days but within 365 days from the date of a covered Transplant Procedure for which an Indemnity Benefit is paid if death is due to a transplant related cause.

#### MAXIMUM BENEFIT

Payment of the Indemnity Benefit shall not be made more than once to an insured employee in his lifetime, and payment of the Extended Benefit shall not be made more than once, regardless of the number of Transplant Procedures that an insured employee may undergo, or the number of policies he may have with us which include this benefit.

#### PAYMENT OF BENEFITS

Any benefits which become payable shall be paid to the insured employee, if living, otherwise to his designated beneficiary or to his estate if no beneficiary is designated.

#### PRE-EXISTING LIMITATION

During the first twelve months of any insured employee's coverage, the human organ transplant benefit will not be payable for conditions pre-existing within a twelve month period immediately preceding the insured employee's effective date of insurance. A pre-existing condition means a physician has considered, recommended, approved and/or scheduled transplant within the twelve month period immediately preceding the insured employee's effective date of coverage.

**GENERAL EXCLUSIONS**

This policy will not cover any disability due to:

1. war, declared or undeclared, or any act of war;

2. intentionally self-inflicted injuries;

3. active participation in a riot;

4. the commission or attempted commission of a felony by the insured.

**PARTICIPATION** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the person of the insured, if such actions of defense are not taken against persons seeking to maintain or restore law and order including but not limited to police officers and firemen.

**RIOT** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

**SECTION IV - BENEFITS (continued)**

**PRE-EXISTING CONDITION LIMITATION FOR DISABILITY INCOME BENEFITS**

If an insured employee becomes disabled due to a pre-existing condition during the first year after becoming covered and that disability exceeds the elimination period, we will pay the regular monthly benefit for a period not to exceed one month.

**PRE-EXISTING CONDITION** means a diagnosed sickness or injury for which the insured received treatment within three (3) months prior to the insured's effective date. The term "Pre-existing Condition" will also include any condition which is related to any such injury or sickness.

**TREATMENT** means consultation, care or services provided by a physician including diagnostic measures and taking prescribed drugs and medicines.

# SECTION V
# TERMINATION PROVISIONS

## A. TERMINATION OF EMPLOYEE'S INSURANCE

An employee will cease to be insured at 12:00 midnight on the earliest of the following dates:

1. the date this policy terminates but without prejudice to any claim originating prior to the time of termination;

2. the date the employee is no longer in an eligible class;

3. the date the employee's class is no longer included for insurance;

4. the last day for which any required employee contribution has been made;

5. the date the employee has served on full-time active duty for more than 30 days in any Armed Forces, including the National Guard or Military Reserves;

6. the date employment terminates. Cessation of active employment will be deemed termination of employment, except:

    a. the insurance will be continued for an employee absent due to total disability during:

        i.  the elimination period; and
        ii. the period during which premium is being waived.

    b. the employer may choose to continue the employee's insurance by paying the required premium, subject to the following:

        i.   insurance may be continued for employees who are temporarily laid off or given a leave of absence, but not beyond the end of the month following the month the layoff or leave of absence begins;

        ii.  the employer must act so as not to discriminate unfairly among employees in similar situations; and

        iii. premiums for continuation of coverage must be paid by or through the employer.

7. the date the employee ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

The Company reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

VLTD B39 1 (7 89)

## SECTION V – TERMINATION PROVISIONS (continued)

### B. TERMINATION OF POLICY

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the policyholder fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight of the last day of the grace period. The policyholder may terminate this policy by advance written notice delivered to the Company at least 31 days prior to the termination date. But, this policy will not terminate during any period for which premium has been paid. The policyholder will be liable to the Company for all premiums due and unpaid for the full period for which this policy is in force.

3. The Company may terminate this policy on any premium due date by giving written notice to the policyholder at least 31 days in advance if:

   a. the number of employees insured is less than ten (10); or

   b. the policyholder fails:

      i. to furnish promptly any information which the Company may reasonably require; or

      ii. to perform any other obligations pertaining to this policy.

4. Termination may take effect on an earlier date when both the policyholder and the Company agree.

# SECTION VI
# GENERAL POLICY PROVISIONS

**A. STATEMENTS**

In the absence of fraud, all statements made in any signed application are considered representations and not warranties (absolute guarantees). No representation by:

1. the policyholder in applying for this policy will make it void unless the representation is contained in the signed application; or

2. any employee in applying for insurance under this policy will be used to reduce or deny a claim unless a copy of the application for insurance, signed by the employee, is or has been given to the employee.

**B. COMPLETE CONTRACT - POLICY CHANGES**

1. This policy is the complete contract. It consists of:

   a. all of the pages;

   b. the attached signed application of the policyholder;

   c. each employee's signed application for insurance (employee retains his own copy).

2. The policy may be amended at any time by written agreement between the policyholder and the Company. Only an officer of the Company can approve a change in the policy.

3. Any other person, including an agent, may not change this policy or waive any part of it.

**C. EMPLOYEE'S CERTIFICATE**

The Company will provide a certificate to the policyholder for delivery to each insured. It will state the benefits to which the insured is entitled and to whom these benefits are payable. If the terms of a certificate and this policy differ, this policy will govern.

## SECTION VI - GENERAL POLICY PROVISIONS (continued)

### D. FURNISHING OF INFORMATION - ACCESS TO RECORDS

1. the employer will furnish at regular intervals to the Company:

    a. information relative to employees:

        i.   who qualify to become insured;
        ii.  whose amounts of insurance change; and/or
        iii. whose insurance terminates.

    b. any other information about this policy that may be reasonably required.

    The employer's records which, in the opinion of the Company, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not:

    a. deprive an employee of insurance;
    b. affect an employee's amount of insurance; or
    c. affect or continue an employee's insurance which otherwise would not be in force.

### E. MISSTATEMENT OF AGE

If an employee's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon an employee's age, as shown in the Benefit Duration Schedule, the amount of the benefit will be the amount an employee would have been entitled to if his or her correct age were known.

Note:   A refund of premium will not be made for a period more than twelve months before the date the Company is advised of the error.

### F. NOTICE AND PROOF OF CLAIM

1. Notice

    a. Written notice of claim must be given to the Company within 30 days of the date of death, the date disability starts, or the date of loss, if that is possible. If that is not possible, the Company must be notified as soon as it is reasonably possible to do so.

    b. When the Company has the written notice of claim, the Company will send the insured its claim forms. If the forms are not received within 15 days after written notice of claim is sent, the insured can send the Company written proof of claim without waiting for the form.

## SECTION VI - GENERAL POLICY PROVISIONS (continued)

2. Proof

    a. Proof of claim must be given to the Company. This must be done no later than 90 days after the end of the elimination period, the date of the insured's death, or the date of loss.

    b. Failure to furnish such proof within such time shall not invalidate nor reduce any claim if it was not reasonably possible to furnish such proof within such time. Such proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

    c. Proof of continued disability and regular attendance of a physician must be given to the Company within 30 days of the request for the proof.

    d. The proof must cover:

        i. the date disability started;

        ii. the cause of disability; and

        iii. the degree of disability.

### G. PHYSICAL EXAMINATION AND AUTOPSY

The Company, at its own expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of a claim, examined by a physician, vocational expert, or other representative of its choice. This right may be used as often as reasonably required. We may also have an autopsy made in case of death, unless not allowed by law. (Mississippi does not allow autopsy.)

### H. LEGAL PROCEEDINGS

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after proof of claim has been given; or

2. more than 3 years (5 years in Kansas and Tennessee) after the time proof of claim is required.

### I. TIME OF PAYMENT OF CLAIMS

When the Company receives satisfactory proof of a disability income claim, benefits payable under this policy will be paid monthly during any period for which the Company is liable. Any balance remaining unpaid upon the termination of the period of liability will be paid immediately upon receipt of due written proof.

When we receive proof of any other loss, we will pay all benefits due.

### J. PAYMENT OF CLAIMS

All benefits are payable to the employee. But if a benefit is payable to an employee's estate, an employee who is a minor, or an employee who is not competent, the Company has the right to pay up to $1,000 to any of the employee's relatives whom the Company considers entitled. If the Company pays benefits in good faith to a relative, the Company will not have to pay such benefits again.

The monthly benefits for this policy will be paid on a prorata basis. The rate will be 1/30 per day for any period of disability that does not extend through a full month.

### K. ASSIGNMENT

No assignment of benefits will affect us unless it is in writing on a form acceptable to us and a copy is given to us at our Home Office. We take no responsibility for the validity of any assignment.

### L. CLAIM REVIEW

If a claim is denied, the employee will be given written notice of:
1. the reason for the denial; and
2. the policy provision that relates to the denial; and
3. his right to ask for a review of his claim; and
4. any additional information that might allow us to change our decision.

USAble Life shall have authority and full discretion to determine all questions arising in connection with the Plan benefits, including but not limited to eligibility, beneficiaries, interpretation of Plan language, and findings of fact with regard to any such questions. The actions, determinations, and interpretations of USAble Life with respect to all such matters shall be conclusive and binding. This means that should there be any question concerning how the Plan applies:
1. to any claim for benefits;
2. concerning an employee's eligibility for Plan benefits;
3. concerning the determination of beneficiaries; or
4. to any other question or issue, whether one of fact or one of Plan interpretation;

USAble Life is deemed to have the exclusive right and authority to resolve all such questions in the exercise of USAble Life's sole discretion.

The employee may, upon written request, read any reports that are not confidential. For a small fee, we will make copies of those reports for his use.

### M. RIGHT OF RECOVERY

If LTD benefits have been overpaid on any claim, it will be required that reimbursement be made to USAble Life within 60 days, or USAble Life has the right to reduce future benefits until such reimbursement is received. USAble Life also has the right to recover such overpayment from the insured or his estate.

### N. WORKERS' or WORKMEN'S COMPENSATION

This policy is not in lieu of, and does not affect, any requirement for coverage by Workers' or Workmen's Compensation Insurance.

SECTION VI - GENERAL POLICY PROVISIONS (continued)

**O. AGENCY**

For all purposes of this policy, the policyholder acts on its own behalf or as agent of the employee. Under no circumstances will the policyholder be deemed the agent of the Company without a written authorization.

**P. CONFORMITY WITH LOCAL STATUTES**

Any provision of this policy which, on its Effective Date, is in conflict with the statutes of the jurisdiction in which this policy was delivered is hereby amended to conform to the minimum requirements of such statute.

**Q. INCONTESTABILITY**

The validity of the policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue. The validity of the policy shall not be contested on the basis of a statement made relating to insurability by any person covered under the policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**R. INSURANCE FRAUD**

Warning: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete, or misleading information may be guilty of insurance fraud and prosecuted.

We may terminate the coverage of any insured person if that person has filed a fraudulent claim or statement with us.

We may terminate the group policy if the policyholder or his administrator has filed or assisted with the filing of a fraudulent claim with us.

# SECTION VII
# PREMIUMS

## A. PREMIUM RATES

The initial premium is determined on the basis of the rates shown on the policy face page.

The Company may establish new rates for all future premiums as well as the one then due:

1. when the terms of this policy are changed;

2. when a division, subsidiary, or affiliated company is added to this policy; or

3. when the number of Insured Persons changes by 25% or more from the number insured on the Policy Effective Date; or

4. for reasons other than 1., 2., or 3. above, such as, but not limited to a change in factors bearing on the risk assumed. But, the rates may not be changed within the first 12 months following the policy effective date.

No premium may be increased unless the Company notifies the employer at least 31 days in advance. Premium increases may take effect on an earlier date when both the Company and the employer agree.

## B. PAYMENT OF PREMIUMS

1. Premium payment calculations will be based on the coverage provided under this policy. Both are determined by the definition of basic monthly earnings.

2. All premiums due under this policy, including adjustments, if any, are payable by the employer on or before their due dates at the Company's home office. The due dates are specified on the first page of this policy.

3. Premiums payable to the Company will be paid in United States dollars.

4. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

5. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of Employee's Insurance" section of this policy.

**SECTION VII - PREMIUMS (continued)**

     6.  If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorata adjustment on the next premium due date.

     7.  Except for fraud — premium adjustments, refunds or charges will be made only for:

         a.  the current policy year; and

         b.  the prior policy year.

**C.  WAIVER OF PREMIUM**

Premium payments are waived during any period for which benefits are payable. If coverage is to be continued, premium payments may be resumed following a period during which they were waived.

e of Process
of Commerce & Insurance
mes Robertson Pkwy.-7th Floor
ille TN 37243





7012 3460 0002 8948 3504

FIRST CLASS



02 1M
00042899
MAILED FR

7012 3460 0002 8948 3504    0
USABLE LIFE INSURANCE COMPAN
2908 POSTON AVENUE  % CORP. S